IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| THE ESTATE OF MELANIE DeCRANE, through MELLIE DeCRANE, as Personal Representative,<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN TENKE,<br><br>Defendant. | CV 21-113-BLG-SPW<br><br>ORDER |

Plaintiff Estate of Melanie DeCrane filed this action against Defendant Justin Tenke, alleging negligence, wrongful death, and a survival action. (Doc. 1-3 at 4-5). Before the Court is Defendant's Motion for Summary Judgment (Doc. 20). For the following reasons, the Court grants summary judgment for Defendant on the survival action and denies summary judgment on all other issues.

I.  **Statement of Facts**

Just after midnight on June 23, 2020, Defendant was driving a Ford F-350 north on Highway 451 toward Wyola, Montana at about 70 mph. (Doc. 26-1 at 11). Defendant straddled his truck over the centerline to avoid wildlife. (*Id.*).

This portion of the two-lane highway is straight, and visibility is unobstructed. (*Id.* at 5). The speed limit is 65 mph. (*Id.*). That night, the moon

1

was a waning crescent and below the horizon line, so the road was only illuminated by Defendant's headlights. (*Id.* at 11; Doc. 22 at 4).

Around milemarker 31, Defendant looked and reached into the backseat to check on his dog, taking his eyes off the road. (Doc. 26-1 at 7). When he looked forward, he briefly saw something, then hit Melanie DeCrane and Darrell Lefthand,[1] who were either seated or kneeling in the middle of the road. (*Id.* at 11). DeCrane and Lefthand were killed. An autopsy determined DeCrane died as a result of multiple blunt force injuries. (Doc. 26-3 at 1).

After the crash, Plaintiff filed suit against Defendant for negligence, wrongful death, and a survival action. (Doc. 1-3).

## II. Legal Standard

### A. *Summary Judgment*

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Id.*

---

[1] Lefthand's estate also has sued Defendant in a companion case, 1:21-CR-114.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To meet this burden, the movant must identify those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)). If the movant meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When deciding the motion, the Court must draw all inferences from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

B.   *Negligence*

"Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstances." *Peterson v. Eichhorn*, 189 P.3d 615, 620-21 (Mont. 2008).[2] Under Montana law, a plaintiff alleging negligence must prove: (1) the defendant owed a duty to plaintiff, (2) the defendant breached that duty, (3) the breach injured the plaintiff, and (4) damages resulted.

---

[2] Defendant moved for summary judgment on Plaintiff's negligence and wrongful death claims. Because negligence is the main element of wrongful death, the Court's analysis will focus on negligence. *See* Mont. Code Ann. § 27-1-513.

3

*Id.* Violation of a traffic statute constitutes negligence per se. *Giambra v. Kelsey*, 162 P.3d 134, 145 (Mont. 2007).

"[A] plaintiff's contributory negligence may be raised as a defense to a negligence claim." *Larchick v. Diocese of Great Falls-Billings*, 208 P.3d 836, 850 (Mont. 2009). However, a plaintiff's contributory negligence only bars recovery if the plaintiff is more than 50% negligent. *Id.* This negligence scheme is called comparative negligence.

Summary judgment is generally inappropriate in negligence and comparative negligence cases because of the prevalence of factual issues. *See Peterson*, 189 P.3d at 621, 622; *Reed v. Little*, 680 P.2d 937, 940-41 (Mont. 1984) (where there is evidence of negligence by both parties, the factfinder generally should determine the comparative degree of negligence). "However, summary judgment may be appropriate when reasonable minds 'could not draw different conclusions from the evidence.'" *Walden v. Yellowstone Elec. Co.*, 487 P.3d 1, 6 (Mont. 2021) (citing *Larchick*, 208 P.3d at 857 (internal quotation omitted)).

**III. Analysis**

  *A.  Admissibility of Expert Report*

As an initial matter, the Court must decide what parts of Plaintiff's expert report the Court can consider at summary judgment. Defendant argues Plaintiff

4

impermissibly relies on conclusions of law from its expert, Jamie Maddux, to rebut summary judgment. (Doc. 28 at 2-3).

Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). *See also Ballen v. City of Redmond*, 466 F.3d 736, 745 (9th Cir. 2006) (the court may only consider admissible evidence in ruling on a summary judgment motion). "[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal citation omitted) (emphasis in original). However, expert testimony on an ultimate issue of fact is admissible. *Id.* (citing Fed. R. Evid. 704(a)).

The line between expert opinion on an ultimate issue of fact and a legal conclusion is fine; an expert can testify to an issue of law, but not express an opinion on a conclusion of law. *Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996). For instance, in *Hangarter*, the plaintiff's expert could testify that the defendants deviated from industry standards in order to support a finding of bad faith. 373 F.3d at 1016. However, the expert could not "testif[y] that he had reached a legal conclusion that Defendants actually acted in bad faith." *Id.*

Maddux concludes in his report that Defendant violated a handful of Montana laws, including Mont. Code Ann. §§ 61-8-321, 61-8-328 for failure to

drive on the right side of the roadway and for driving over the center line, respectively. (Doc. 26-2 at 8). These are impermissible legal conclusions that the Court cannot consider. However, Maddux also comments on the issues pertaining to the traffic laws, such as his conclusion that one or more of the fatalities could have been avoided if Defendant had been driving in the correct lane. (*See id.*). These are permissible statements on an ultimate issue of fact. As such, the Court disregards Maddux's legal conclusions but will consider the statements on the ultimate issues of fact.

Importantly, the Court does not take issue with the legal conclusions made by Plaintiff in its brief that are based on the facts and factual opinions contained in Maddux's report. Defendant frames these legal conclusions as based entirely on Maddux's legal conclusions. (Doc. 28 at 2). However, Plaintiff is permitted to conclude that Defendant violated a statute based on her expert's determination that Defendant was driving in the middle of the road. That is the role of an attorney.

### B. Negligence and Wrongful Death

Because this case involves the driver of a vehicle and a pedestrian, and both are alleged to have acted negligently, the Court will outline the standards of care for drivers and pedestrians.

Generally, Montana drivers have a duty to operate their vehicle "in a careful and prudent manner that does not unduly or unreasonably endanger the life, limb,

property or other rights of a person entitled to the use of the highway." Mont. Code Ann. 61-8-302(1). Pursuant to the duty to drive carefully and prudently, drivers must "look not only straight ahead but laterally ahead ... to see that which is in plain sight." *Walden v. Yellowstone Elec. Co.*, 487 P.3d 1, 6 (Mont. 2021) (internal citation and quotation omitted). A motorist "is presumed to see that which he could see by looking, and he will not be permitted to escape the penalty of his negligence by saying that he did not see that which was in plain view." *Id.* (internal citation omitted). A driver cannot escape negligence if they did not see what was in plain sight because they were not looking. *Payne v. Sorenson*, 599 P.2d 362, 364 (Mont. 1979).

Pedestrians also must fulfill their duty of care on roadways. *Fretts v. GT Advanced Tech. Corp.*, CV 11-160, 2013 WL 816684, at *1 (D. Mont. Mar. 5, 2013). Unless a pedestrian is in a crosswalk or crossing the street, a pedestrian and motorist generally have equal rights to the use of a public highway.[3] *Hightower v. Alley*, 318 P.2d 243, 247 (Mont. 1957); *Sorrells v. Tryan*, 281 P.2d 1028, 1030 (Mont. 1955). However, a pedestrian still must exercise reasonable care to prevent injury to herself. *Oberson v. United States*, 311 F. Supp. 2d 917, 960 (D. Mont.

---

[3] Defendant cites to Mont. Code Ann. § 61-8-503(1) for the contention that "pedestrians ... shall yield the right-of-way to all vehicles on the roadway." (Doc. 21 at 7). However, this section of the statute applies when a person is *crossing* a street, as the portion of the statute Defendant omitted states. Since the parties did not assert nor did the evidence suggest that DeCrane was crossing the road, the Court does not apply this section of the statute or the right-of-way Defendant requests.

7

2004) (citing Mont. Code Ann. § 27-1-701)). Specifically, an unintoxicated[4] pedestrian "walking along and upon a highway [without a sidewalk] may walk only on the shoulder, as far as practicable from the edge of the roadway." Mont. Code Ann. § 61-81-502.

When the driver and pedestrian both have acted with substantial negligence, the Court must deny summary judgment to allow the factfinder to determine the degree of each party's negligence, unless exceptional circumstances exist. *Dillard v. Doe*, 824 P.2d 1016, 1018-20 (Mont. 1992). For instance, in *Dillard*, the Court found that a pedestrian walking on the wrong side of the highway who failed to move away from the road after he saw a snowplow approaching was clearly negligent. *Id.* However, the Court denied summary judgment for the snowplow driver because the driver's negligence was also substantial: the driver failed to keep a proper lookout, failed to maintain control of his vehicle, drove too close to the pedestrian, and drove too fast. *Id.* at 1018-19. Because the evidence showed both parties were substantially negligent, summary judgment was improper. *Id.* at 1019. *Cf. Brohman v. Montana*, 749 P.2d 67 (Mont. 1988) (finding an exceptional circumstance existed to grant summary judgment when the state's negligence was minimal—failing to warn of a no-passing zone—but the driver's negligence was

---

[4] Defendant implicitly suggests that DeCrane's sobriety is in question. (*E.g.* Doc. 21 at 8 "Decrane ... would have been permitted on the shoulder (if sober) and, off the roadway, if intoxicated."). However, both the police and autopsy reports found she was negative for alcohol and all tested drugs. (Doc. 26-1 at 2; 26-3 at 6).

substantial—attempting to pass in a no-passing zone, at night, in a snowstorm, with obscured visibility).

Conversely, when only a pedestrian was negligent per se, the court asks whether the pedestrian was plainly visible to the motorist, such that the motorist had a duty to stop or avoid the pedestrian. *Payne*, 599 P.2d at 364. On a motion for a new trial, *Payne* found that the pedestrian was not plainly visible because he was wearing dark clothing on a moonless night while walking with his back to traffic. *Id.* at 364-65. As such, the pedestrian was not in plain view, and the driver did not breach his duty to see and react to what can be plainly seen. *Id.* at 364. The pedestrian, on the other hand, breached his duty by walking on the wrong side of the road. *Id.* Since the pedestrian was more negligent than the driver, he could not recover. *Id.*

Here, the exceptional circumstances that would allow the Court to grant summary judgment do not exist, while genuine issues as to the comparative fault of the parties exist. Like in *Dillard*, the record shows both parties acted negligently: Defendant was looking away from the road into his backseat (Mont. Code Ann. § 61-8-302), driving in the middle of the road (§§ 61-8-321, 61-8-328), and speeding (§ 61-8-303). DeCrane was in the middle of the road at night (§ 61-81-502). Further, unlike in *Brohman*, Defendant's negligence was substantial because he took his eyes off the road while speeding. As such, both parties were substantially

9

negligent, making it inappropriate for the Court to assign the exact degree to each at summary judgment.

Additionally, disputes exist as to whether DeCrane was plainly visible in the road, and thus whether Defendant would have a reason to have not seen her had he been looking. Defendant asserts that DeCrane's "decision to be in a lowered position in the roadway" would have made her more difficult to see, and thus enhances the negligence with which she acted. (Doc. 21 at 7). However, reasonable minds could conclude that even someone squatting should be visible on a straight road when the driver's headlights are on, since drivers also can see potholes, ice chunks, and other small hazards in the road at night with their headlights on, and are generally on the lookout for wildlife. This reasonable conclusion emphasizes the fact that Defendant was looking in his backseat right before the collision and that Defendant may have been outdriving his headlights, as Plaintiff suggests (Doc. 26 at 12), in violation of Defendant's duty of care.

Reasonable minds could also conclude that because Defendant did not see DeCrane or some sort of obstruction prior to him looking in the backseat, DeCrane must not have been plainly visible. Both conclusions are reasonable, as emphasized by the fact that Montana State Highway Trooper Justin Moran, a primary investigative officer on the case, testified he did not know if Defendant could have seen DeCrane in time to avoid the collision. (Doc. 22 at 5).

10

Defendant maintains that Plaintiff should have heard and seen Defendant's truck in time to move out of the way. (Doc. 21 at 8). One could agree, but one could also conclude that at Defendant's rate of speed, she did not have time to get herself (and Lefthand) out of the way. Defendant's argument also begs the question of why, if DeCrane had time to get out of the way, Defendant did not have time to slow down or stop. Looking to the facts, a reasonable person could conclude that he did not have time because he was looking away from the road and speeding.

Finally, the Court finds that whether Defendant could have avoided hitting DeCrane if he was driving in the correct lane is in dispute. Plaintiff's expert provides a compelling breakdown of the feet by which DeCrane and Lefthand would have been avoided if Defendant was driving in the correct lane. (*See* Doc. 26-2 at 8). However, the record is not clear on whether DeCrane was the pedestrian fully in the southbound lane who would have been avoided.

For these reasons, it is for the factfinder to assign the degree to which each party was comparatively negligent, and the Court denies summary judgment on Plaintiff's negligence and wrongful death claims.

C.  *Survival Action*

Defendant also moves for summary judgment on Plaintiff's survival action. A survival action allows a decedent's personal representative to sue for tort actions

11

occurring during the person's lifetime because they survive her death. Mont. Code Ann. §§ 27-1-501, 72-3-604. Importantly, a survival action cannot be brought when the decedent's death is instantaneous. *Swanson v. Champion Int'l Corp.*, 646 P.2d 1166, 1169 (Mont. 1982).

Here, Defendant argues that DeCrane's death was instantaneous, and so Plaintiff cannot claim a survival action. (Doc. 21 at 11). Defendant points to Trooper Moran's determination that DeCrane's death was instantaneous. (Doc. 22 at 6; Doc. 22-1 at 14). Additionally, Defendant asserts that a reasonable person could infer her death was instantaneous because the autopsy found DeCrane was hit by Defendant's truck at 70 mph, "the contents of [her] cranium are exposed and avulsed," and her body was dismembered. (Doc. 28 at 5 (citing Doc. 26-3 at 2-3)). Plaintiff disagrees, contending that a genuine dispute over whether DeCrane instantly died exists because the autopsy report did not expressly find as much. (Doc. 26 at 15-16).

The Court finds that Plaintiff did not meet its burden to rebut Defendant's evidence of the instantaneousness of DeCrane's death, and that no reasonable person could agree that DeCrane's death was not instantaneous based on the evidence. Although Trooper Moran's conclusion carries some weight, the Court is primarily persuaded by the autopsy's description of DeCrane's body, and Highway Patrol's map of DeCrane's body parts. (Doc. 22-1 at 26). The autopsy and the

12

map indicate that DeCrane was dismembered and disemboweled after being hit by a one-ton pickup truck. Based on these facts, reasonable minds could not draw any conclusion other than that DeCrane instantly died. The autopsy's silence on the issue is insufficient to rebut such strong evidence.

### D. *Punitive Damages*

Punitive damages are permitted if clear and convincing evidence shows the defendant acted with actual malice. Mont. Code Ann. § 27-1-221(1). "Liability for punitive damages must be determined by the tier of fact. *Id.* § 27-1-221(6).

Based on the express language statute and the Court's refusal to determine the degree of negligence of each party, with which an award of punitive damages would be intrinsically tied, the Court denies summary judgment on this issue.

## IV. Conclusion

For these reasons, the Court finds that genuine disputes exist as to the material facts of Counts I and II and punitive damages, so summary judgment is not proper on these issues. However, the Court finds that no genuine dispute exists as to the material facts in Count III, and Defendant is entitled to summary judgment as a matter of law on that issue.

IT IS HEREBY ORDERED that Defendant Justin Tenke's Motion for Summary Judgment (Doc. 20) is GRANTED as to Count III (survival action) and DENIED on all other issues.

13

DATED this 19th day of December, 2022.

                                  */s/ Susan P. Watters*
                                  SUSAN P. WATTERS
                                  United States District Judge